The opinion of the court was delivered by
DeBlanc, J.
Defendant was indicted for murder, found guilty of manslaughter and sentenced to hard labor in the State Penitentiary, for the space of twenty years. He has appealed and alleges that the verdict returned against him, and the sentence based on that verdict, should be sot aside and avoided, because:
1, Two applications made by him, one for a change of venue, the other for a continuance of the ease, were improperly denied.
2. The jurors by whom ho was indicted and tried were not legally drawn, inasmuch as the Clerk of the Court who acted as a member of the jury commission and assisted in the drawing, had not then taken— in that capacity — the oath required by law. This objection was urged on the first day of the term of the court.
8. The record does-not show that a grand jury was empanelled, nor who composed it.
Defendant is a white man: he killed — in the parish of St. Charles— one Joseph Johnson, who belonged to the colored class, and the application for a change of venue is founded on the facts that — in said parish— the jury is composed of exclusively individuals of the same class as the *1029 deceased — that the homicide created considerable excitement and commotion in the locality where it occurred, and that several colored men manifested the intention of lynching him and hanging him without judge or jury — that, on account of the prejudice thus existing against him, he could not obtain an impartial trial in either the parish of St. Charles or any other parish of the Fourth Judicial District.
1. The facts that the killing of a human being created a considerable excitement, and that, if tried where the alleged crime was committed, the prisoner would be tried by j urors necessarily taken from the class to which the deceased belonged, are not of themselves sufficient to authorize a change of venue. The excitement which prevails on those grave occasions does not constitute that prejudice which disqualifies an entire community from entering the jury-box, to ascertain and determino whether the law has or has not been violated, whether an accused is or is not guilty of the commission of the crime charged against him.
As to the other branch of this objection, we can only say : that tho whites are thoroughly convinced, and that the blacks should realize that j ustiee must be done — not only to all — but by all. They are now — as the whites — called upon to pass upon the rights, wrongs, life and liberty of others — and, in the interest of their own race, they must learn how to impartially try, convict or release a prisoner, whatever may be the color of his skin.
Wharton Crim. Law, 7th ed. vol. 1, No. 469, paragraph 4.
As regards the locality where the trial is to take place, the rule is a constitutional one: the accused must be tried in the parish where it is alleged that the crime has been committed, unless there the public mind be clouded by and harbors a prejudice for or against the prisoner.
In this case, the District Judge decided that the apprehended prejudice did not exist, and, as no bill of exception was reserved to any of his rulings during the course of the trial of defendant’s application for a change of venue, his decision on this point can neither be reviewed nor reversed.
2. Was tho jury regularly drawn? The 3d section of act No. 44 of the Legislature, approved on the Stli of March, 1877, provides — in substance — “that the several District Judges throughout the State, shall select four discreet citizens, who — with the clerk of the district court, shall constitute a jury commission for each parish, etc., and that — before entering upon the discharge of their duty, each member of the commission shall take an oath faithfully to discharge the duties imposed upon him by this act.”
The Clerk who assisted in the drawing of the jury by whom the prisoner was indicted and tried, had not — when ho so assisted — taken the oath prescribed by the act of -1877. Tho presiding Judge held that *1030 be would judicially notice that the Clerk was a sworn officer. That was not sufficient — for the law expressly declares that he is a member of the jury commission, and — not that only the four citizens shall be sworn — ■ but that each member o£ that commission shall take an oath, the very terms and form of which are specified in the act. When must each of those commissioners take that oath? Before entering upon the discharge of their duty as such. This, the Clerk did not do : he did not qualify as a jury commissioner, and that omission did vitiate the drawing of the jury by whom the accused was indicted and tried.
The act of 1877 provides, it is true, that three members of said commission shall be a sufficient number to perform the duties imposed upon it, but it also provides — in terms too clear and too imperative to be disregarded, that no one shall be qualified as a jury commissioner without being sworn in that capacity, and — by an irresistible inference — that, before so qualifying, no one shall participate in the drawing of juries. What three of the commissioners might have done without the presence of the others, the whole commission could not legally do with the participation of the unsworn clerk. His duties are the most responsible of those which devolve upon said commission : he makes, under its supervision, theproces verbal of its acts, the list of persons from whom the jurors are to be drawn, keeps a record of the drawing, showing the weeks for which the jurors are to serve, delivers to the sheriff and publishes, in the official journal, a list of their names, and — besides—the jury-box, with the evidence of each separate drawing, is loft in his custody. All this he does — not under any power vested in him as clerk, but under the special power conferred on him as a commissioner. The regularity of his acts — in that capacity — or rather the presumption of that regularity flows from, and — under no circumstances — can precede his qualification, which springs and dates from the taking of the special oath prescribed by the act of 1877, an oath different from that administered to clerks, and destined to secure the performance of a newly created duty, imposed upon him in a newly created character, added and attached to his official title and official capacity, as the Clerk of the District Court.
The Legislature might have dispensed an already sworn officer from taking the additional oath prescribed by the act of 1877, but it did the very reverse, and — from the carefully selected and reiterated terms of the act — the Legislature intended to do the very reverse — for, by merely looking at the provisions of the statute, one can see that the Clerk is a member of the jury commission, that each member of that commission is commanded to take the prescribed oath — that, before complying with that imperative condition, not one of the commissioners is qualified, not one' is authorized to enter on the discharge of his duties. The statute *1031 •expressly directs that the oath shall be taken before, and — in this case— it was taken after the imposed duty had been accomplished.
In this instance, the selection of the jurors was not legal, and the Inevitable result of that illegal selection was to affect the composition of ■the grand and petit j ary, the validity of the indictment, the verdict and the sentence.
The prisoner has not been in jeopardy, was and stands charged with the crime of murder, and — as no prescription bars the prosecution of that crime, he should not be released on account of the informality ■which compels us to reverse the judgment pronounced against him.
It is, therefore, ordered, adjudged and decreed that the indictment ■filed on the 8th of May 1877, in the District Court for the parish of St. Charles, against John Williams, for the alleged murder of Joseph John•son, is quashed and avoided, and that the verdict, sentence and judgment appealed from be and they are hereby annulled and set aside.
It is further ordered that said John Williams be held in custody until after the adjournment of the first session of the grand jury of the parish of St. Charles, which shall be therein empanelled after this decree is returned to the lower court, to answer to such charge as may be preferred against him for the alleged murder of Joseph Johnson.
The Chief Justice dissents from this opinion and decree.